FILED

NOV 0 5 2014

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

Civil No. 1:14-CV-184

UNITED STATES CURRENCY
AGGREGATING $581,222.57,

    Defendant.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, by its attorneys, William J. Ihlenfeld, II, United States Attorney for the Northern District of West Virginia, and Zelda E. Wesley, and John C. Parr, Assistant United States Attorneys for said district, brings this complaint and alleges as follows in accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

### NATURE OF THE ACTION

1.     This is a civil forfeiture action against property involved in violations of the Controlled Substances Act and the money laundering statutes that is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), and 18 U.S.C. § 981(a)(1)(A).

### THE DEFENDANTS IN REM

2.     The defendant is $581,222.57 in United States Currency.

3.     The defendant property comprises the following funds:

    A.     $7,373.54 seized on May 8, 2014, from First National Bank account ****4997,

    B.     $16,361.25 seized on May 8, 2014, from First National Bank account ****8803;

    C.     $295,298.97 seized on May 8, 2014, from PNC Investment Account ****2388;

    D.     $22,310.95 seized on May 8, 2014, from Huntington Bank account ****4843;

  E. $191,616.03 seized on May 8, 2014, from Huntington Bank account ****7627;

  F. $10,670.00 seized on May 8, 2014, from First National Bank account ****0112;

  G. $316.15 seized on May 8, 2014, from First National Bank account ****6508;

  H. $15,379.41 seized on May 8, 2014, from First National Bank account ****6798; and

  I. $37,275.68 seized on June 17, 2014, from Dollar Bank account ****3408.

4. The defendant property is currently located in the custody of the United States.

## JURISDICTION AND VENUE

5. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, over an action for forfeiture under 28 U.S.C. §§ 1355(a) and (b), and over this particular action under 21 U.S.C. §§ 881(a)(6), and 18 U.S.C. § 981(a)(1)(A).

6. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b). Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(C).

## BASIS FOR FORFEITURE

7. The defendant property is subject to forfeiture under the following alternative theories:

  A. Pursuant to 21 U.S.C. § 881(a)(6) because it represents moneys, negotiable instruments and other things of value furnished and intended to be furnished in exchange for a controlled substance or controlled substance analogue, or constitutes proceeds traceable to such an exchange, in violation of 21 U.S.C. §§ 841, 813 and 802(32)(A);

    B.    Pursuant to 21 U.S.C. § 881(a)(6) because it represents moneys and negotiable instruments used and intended to be used to facilitate the lease, rent, use, maintenance, management and control of a place, to wit: a business known as Mid-Nite Adult, for the purpose of manufacturing, distributing, storing, and using a controlled substance or controlled substance analogue, in violation of 21 U.S.C. §§ 841, 813 and 802(32)(A); and

    C.    Pursuant to 18 U.S.C. § 981(a)(1)(A) because it represents property involved in a violation of 18 U.S.C.§ 1957, or property traceable to such property.

8. To the extent that it is necessary to do so, Plaintiff intends to rely on the provisions of 18 U.S.C. § 984 to establish that the defendant property is the property involved in the violations of 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 1957 described above.

## FACTS

9. The following facts establish a reasonable belief that the government will be able to meet its burden of proof at trial. The facts alleged in this Complaint are based upon information and belief, the sources of which are agents and reports from the Drug Enforcement Administration ("DEA"), the Mon Valley Drug Task Force ("MVDTF" or the "task force"), and other written and oral information received by the United States Attorney's Office for the Northern District of West Virginia.

### Basis for the Investigation

10. Beginning on or around July 2012, the MVDTF began receiving information from various law enforcement agencies within the Northern District of West Virginia that individuals were purchasing synthetic drugs commonly known as "spice" from a business called "Mid-Nite Adult", located at 275 Spruce Street, Morgantown, West Virginia.

3

11. Based on this information, the task force commenced an investigation into the possible illegal distribution of synthetic drugs by conducting undercover and controlled purchases from Mid-Nite Adult to ascertain the contents of the store and the sales being conducted.

12. Mid-Nite Adult is owned and operated by Daniel Kocan. Mid-Nite Adult is purportedly an adult novelty store.

13. The investigation has also revealed that Daniel Kocan and his wife, Sally Kocan, own and operate another business known as Dahlia's on Walnut. Dahlia's on Walnut is purportedly a fashion boutique located at 245 Walnut Street, Morgantown, West Virginia.

14. Mid-Nite Adult and Dahlia's on Walnut are incorporated under Pit-ERI, LLC.

**Synthetic Cannabinoids**

15. In recent years, individuals have begun to manufacture and distribute smokable synthetic cannabinoid products. A "cannabinoid" is a class of chemical compounds in the marijuana plant. The cannabinoid THC (tetrahydrocannabinol) is the primary psychoactive constituent of marijuana. Synthetic cannabinoids are a large family of chemical structures similar to THC and are believed to mimic the effects of THC in that they act on the same receptors in the central nervous system. These products are commonly sold from novelty stores (commonly called "head shops"), convenience stores, gas stations, and other business locations.

16. From the inception of this investigation, the MVDTF received information about new street drugs named UR-144, XRL11, and AB-FUBINACA. These drugs are variations of synthetic cannabinoids, which are currently Schedule I controlled substances with similar effects on the human central nervous system as marijuana. Synthetic cannabinoids are commonly referred to as "synthetic marijuana" and packaged as "spice" or "incense." Pursuant to DEA

4

Mid-Atlantic laboratory results, the substances UR-144, XLR11, and AB-FUBINACA have been found in some of the chemical compounds sold by Mid-Nite Adult and discussed below.

17. There are no commercial or medical uses for UR-144, XLR11, and AB-FUBINACA.

**Applicable Statutes**

18. 21 U.S.C. § 802(32)(A) defines the term "controlled substance analogue" as "a substance – the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II; [and either] which as a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II."

19. Title 21 U.S.C. § 813 states "a controlled substance analogue, shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I."

20. Effective March 1, 2011, the Administrator of the DEA issued a final order temporarily making 1-pentyl-3-(1-naphtholy)indol (JWH-018) a Schedule I controlled dangerous substance. *See* 76 Fed. Reg. 11075-01; 21 C.F.R. § 1308.11(g)(3)

21. Congress made JWH-018 a Schedule I controlled dangerous substance, effective July 9, 2012. *See* Pub L. No. 112-144, § 1152; 21 C.F.R. § 1308.11(g)(3).

22. Analysis conducted by the DEA on analogues such as UR-144 and XLR-11 has concluded that these analogues are substantially similar in chemical structure and have similar

pharmacological effects on the central nervous system to those of the Schedule I banned substance JWH-018.

23. Effective May 16, 2013, the Deputy Administrator of the DEA issued a final order temporarily making substances known as 1-(pentyl-1H-indol-3yl)(2, 2, 3, 3 -tetramenthylcyclopropyl) methanone (UR-144), and 1-(5-fluoro-pentyl)-1H-indol-3yl (2, 2, 3, 3tetramethylcyclopropyl) methanone (5-fluoro-UR-144, XLR11), Schedule I controlled dangerous substances, pursuant to the provisions of 21 U.S.C. § 811(h). See 21 C.F.R. §§ 1308.11(h)(9) and (10).

24. Prior to May 16, 2013, and during the time of some of the controlled purchases listed below, UR-144 and XRL-11 were controlled substance analogues.

25. Effective February 10, 2014, The Administrator of the DEA issued a final order temporarily making the substance known as N-(1-amino-3-methyl-1-oxobutan-2-yl)-1-(4-fluorobenzyl)-1H-indazole-3-carboxamide (AB-FUBINACA) a Schedule I controlled dangerous substance. *See* 21 C.F.R. § 1308.11(h)(17).

### Undercover and Controlled Purchases from Mid-Nite Adult

26. On July 31, 2012, two undercover law enforcement officers made purchases of suspected synthetic cannabinoids from Mid-Nite Adult. The officers purchased one packet of "K3 XXX Bomb", and one packet of "Mr. Kush." Upon inspecting the packages purchased, the officers observed that the words "there are no cannabinoids materials in this package" had been marked out with a black marker.

27. Certified forensic chemists at the DEA Mid-Atlantic laboratory chemically analyzed the purchases of "K3 XXX Bomb" and "Mr. Kush" and concluded that the substances contained

6

UR-144 and XRL11, which at the time were analogues of the Schedule I drug controlled substance JWH-018. UR-144 and XRL11 are currently Schedule I controlled substances.

28. On August 28, 2012, two undercover officers purchased from Mid-Nite Adult suspected synthetic cannabinoids known as "Funky Monkey" and "Dead Man".

29. Certified forensic chemists at the DEA Mid-Atlantic laboratory chemically analyzed the purchases of "Funky Monkey" and "Dead Man" and concluded that the substances contained XRL11, which at the time was an analogue of the Schedule I drug controlled substance JWH-018. XRL11 is currently a Schedule I controlled substance.

30. On August 29, 2012, a controlled purchase was conducted at Mid-Nite Adult for a suspected synthetic cannabinoid known as "Sonic Herbal Incense."

31. Certified forensic chemists at the DEA Mid-Atlantic laboratory chemically analyzed the purchase of "Sonic Herbal Incense" and concluded that the substance contained XRL11, which at the time was an analogue of the Schedule I drug controlled substance JWH-018. XRL11 is currently Schedule I controlled substance.

32. On March 8, 2013 a controlled purchase was conducted at Mid-Nite Adult for a suspected synthetic cannabinoid packaged as "Bizzaro".

33. Certified forensic chemists at the DEA Mid-Atlantic laboratory chemically analyzed the purchase of "Bizzaro" and concluded that the substance contained XLR11, which at the time was an analogue of the Schedule I drug controlled substance JWH-018. XLR11 is currently a Schedule I controlled substance.

34. The following purchases of suspected synthetic cannabinoids from Mid-Nite Adult have been sent to the DEA Mid-Atlantic Laboratory for analysis:

    A. On November 29, 2012, two undercover officers purchased from Mid-Nite Adult suspected synthetic cannabinoids known as "Sonic Zero" and "AK47 Blue Moon";

    C.    On September 6, 2013, a controlled purchase was conducted at Mid-Nite Adult for suspected synthetic cannabinoids known as "Purple Haze";

    D.    On September 11, 2013, a controlled purchase was conducted at Mid-Nite Adult for suspected synthetic cannabinoids known as "Twilite";

    E.    On October 1, 2013, a controlled purchase was conducted at Mid-Nite Adult for suspected synthetic cannabinoids known as "Johnny A" and "Diesel"; and

    F.    On April 21, 2014, an undercover officer purchased from Mid-Nite Adult a package of suspected synthetic cannabinoids known as "Scooby Snax." The purchase of "Scooby Snax" was recommended to the officer by a clerk, after the officer asked what purchase would make him "trip."

### Execution of Search Warrant at Mid-Nite Adult

35.    On April 29, 2014, investigative officers executed a search warrant at Mid-Nite Adult, granted by United States Magistrate John S. Kaull.

36.    The search yielded the following synthetic cannabinoids that have been analyzed by the DEA to contain controlled substances:

    A.    54 units of "Fruit Punch Brand", chemically analyzed by the DEA Mid-Atlantic Laboratory to contain the substance XRL11, a Schedule I controlled substance;

    B.    10 units of "Caution Platinum", chemically analyzed by the DEA Mid-Atlantic Laboratory to contain the substance AB-FUBINACA, a Schedule I controlled substance;

    C.    16 units of "Caution Brand Incense", chemically analyzed by the DEA Mid-Atlantic Laboratory to contain the substance AB-FUBINACA, a Schedule I controlled substance.

## Bank Accounts

37. A review of Mid-Nite Adult's bank records by a financial analyst with the DEA revealed that from on or around July 2012, to on around March 2014, Mid-Nite Adult realized approximately $3.2 million in United States Currency which represents proceeds traceable to exchanges of Controlled Substances Act violations, or was used, or intended for use, to commit or to facilitate such violations, and represents proceeds involved in or traceable to money laundering violations.

38. Bank statements from July 2012 until March 2014, detail transactions of the business. Huntington Bank account ****7627 is listed to Mid-Nite Adult.

39. Purchases of synthetic cannabinoids by Mid-Nite Adult were accomplished via payments to a business known as Southern California (So. Cal) Wholesale, located in Chatsworth, California. Records reveal that Mid-Nite Adult paid Southern California Wholesalers approximately $362,791.57 for suspected synthetic cannabinoids from Huntington Bank account ****7627 in 2013.

40. From on or around July 2012, until on or around March 2014, and during the time of the sale of synthetic cannabinoids by Mid-Nite Adult, the following accounts received direct transfers or deposits from Huntington Bank account ****7627:

   A. First National Bank account ****4997, held in the names of Daniel Kocan and Sally Kocan;

   B. First National Bank account ****6508, held in the names of Daniel Kocan and Sally Kocan;

   C. First National Bank account ****0112, held in the name of Sally Kocan;

   D. Huntington Bank account ****4843, held in the name of Dahlia's on Walnut; and

   E. Dollar Bank account ****3408, held in the name of Daniel Kocan.

41. From on or around July 2012, until on or around March 2014, and during the time of the sale of synthetic cannabinoids by Mid-Nite Adult, funds contained in Huntington Bank account ****7627 were funneled through various bank accounts and were subsequently transferred to or deposited into the following accounts:

    A.   PNC Investment Account ****2388, held in the name of Sally Kocan;

    B.   First National Bank account ****6798, held in the name of Sally Kocan;

    C.   First National Bank account ****8803, held in the name of Sally Kocan.

42. Based on the foregoing, the defendant property was seized pursuant to the executions of seizure warrants issued by United States Magistrate John S. Kaull because it is comprised of accounts utilized by Mid-Nite Adult to contain funds: (1) constituting proceeds of violations 21 U.S.C. § 801 et seq.; (2) used, or intended for use, to commit or to facilitate violations of 21 U.S.C. § 801 et seq.; and (3) involved in or traceable to violations of 18 U.S.C. § 1957.

**Civil Forfeiture Action Against Mid-Nite's Inventory and Business License**

43. On April 30, 2014, Plaintiff filed in this judicial district a Verified Complaint for Forfeiture *in Rem*, Civil Case No. 1:14CV78, seeking to forfeit the inventory containing controlled substances or controlled substance analogues seized during the execution of the search warrant at Mid-Nite Adult, and the business license issued to Mid-Nite Adult, pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981.

44. On April 30, 2014, United States District Judge Irene M. Keeley issued a protective restraining order, enjoining Daniel Kocan, Sally Kocan, and Pit-ERI, LLC, d/b/a Mid-Nite Adult from operating Mid-Nite Adult under the defendant the business license to prevent its use in illegal activity, pursuant to 18 U.S.C. § 983(j), and Rule G(7) of Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. To date, the protective restraining order remains in place.

## CONCLUSION

45. Accordingly, there are sufficient facts to support a reasonable belief that the defendant property is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6), and 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the plaintiff prays that all persons who reasonably appear to be potential claimants with interests in the defendant property be cited to appear herein and answer the complaint; that the defendant property be forfeited and condemned to the United States, and that the plaintiff have such other and further relief as this Court deems proper and just.

Respectfully submitted,

By: /s/John C. Parr
Assistant United States Attorney
W.Va. Bar ID No. 2819
United States Attorney's Office
P.O. Box 591
Wheeling, WV 26003
Telephone: (304) 234-0100
Fax: (304) 234-0111
E-mail: John.Parr@usdoj.gov

By: /s/ Zelda E Wesley
Assistant United States Attorney
W.Va. Bar ID No. 6738
United States Attorney's Office
320 W. Pike Street Suite 300
Clarksburg, WV 26301
Telephone: (304) 623-7030
Fax: (304) 623-7031
E-mail: Zelda.Wesley@usdoj.gov

## VERIFICATION

I, Danaë DeMasi-Lemon, am a Senior Law Clerk employed by Forfeiture Support Associates, which has assigned me to assist the United States Attorney's Office for the Northern District of West Virginia, that I have read the foregoing Verified Complaint For Forfeiture *in Rem* and know the contents thereof, and that the factual matters contained in the Complaint are true to my knowledge and belief. The sources of my knowledge and belief are the official files and records of the United States, and information supplied to me by law enforcement officers.

I hereby verify and declare under penalty of perjury as provided by 28 U.S.C. §1746 that the foregoing is true and correct.

Dated: 11/5/14

Danaë DeMasi-Lemon, Esq.
Senior Law Clerk
Forfeiture Support Associates, LLC
United States Attorney's Office for the
    Northern District of West Virginia